UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No.    A 10: 21

|  |  |
|---|---|
| JOHN A. BOLDUC, JR. | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| TOWN OF WEBSTER, ROBIN | ) |
| LEAL, RICHARD BERGERON, | ) |
| and WILLIAM KEEFE, | ) |
| Defendants. | ) |

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

**05-40030**

## NATURE OF CLAIM

1.        This is an action brought by John A. Bolduc, Jr. (hereinafter "Bolduc"), a

9 year police officer with the Town of Webster Police Department, against the Town of

Webster, the Webster Town Administrator, the Webster Chief of Police, the former

Webster Chief of Police, and other as yet unidentified Defendants, pursuant to 42 U.S.C.

§ 1983, 42 U.S.C. 1985 (2), 42 U.S.C. 2000e § 1, et seq., as amended (hereinafter "Title

VII"), M.G.L. Chapter 12H § 11I, M.G.L. Chapter 151B (the Fair Employment Practices

Act), and M.G.L. Chapter 149 §185 (the Whistleblower Act), and for retaliation and

aiding and abetting in retaliatory discrimination by the Defendants against the Plaintiff.

        The Plaintiff seeks injunctive relief, compensatory damages, punitive

damages, costs, attorney's fees and recovery for other losses and damages to the extent

provided by statute or common law.

## ADMINISTRATIVE PROCEDURES

RECEIPT # _404514_
AMOUNT $ _250.00_
SUMMONS ISSUED _✓_
LOCAL RULE 4.1 _✓_
WAIVER FORM _✓_
MCF ISSUED _✓_
BY DPTY. CLK. _____
DATE _2-16-05_

2.      On May 15, 2003, Bolduc advised the Webster Town Administrator, in writing, of his intention to file a complaint with the Massachusetts Commission Against Discrimination (hereinafter "MCAD"). A true and exact copy of the writing is attached hereto, incorporated herein by reference and marked as Exhibit "A."

3.      On June 16, 2003, Bolduc filed a timely charge of retaliation with the MCAD and with the Equal Employment Opportunity Commission, naming as Respondents the Town of Webster Police Department and the Town of Webster Chief of Police, Richard Bergeron, Jr. A true and exact copy of the Complaint is attached hereto, incorporated herein by reference and marked as Exhibit "B."

4.      Bolduc has satisfied all administrative prerequisites to the filing of this action as required by 42 U.S.C. 2000e and M.G.L. Chapter 151B.

5.      On August 5, 2004, Bolduc sent written notice to the Town of his intention to file suit pursuant to M.G.L. Chapter 149 § 185 and has satisfied the notice requirements required by said statute. A true and exact copy of the writing is attached hereto, incorporated herein by reference and marked as Exhibit "C."

JURISDICTION AND VENUE

6.      With respect to Bolduc's claim under Title VII, this Court has original jurisdiction pursuant to 42 U.S.C. §2000e – 5(f) and 28 U.S.C. § 1331.

7.      With respect to Bolduc's claims under M.G.L. Chapter 151B, M.G.L. Chapter 149 § 185, and M.G.L. Chapter 12H § 11I, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8.      With respect to Bolduc's claims pursuant to 42 U.S.C. §§1983 and 1985, this Court has jurisdiction pursuant to 28 U.S.C. § 1343.

9.    The violations of Plaintiff's rights as alleged herein were committed within the Commonwealth of Massachusetts, Worcester County.

PARTIES

10.    Plaintiff, John A. Bolduc, who is, and was at all relevant times hereto, a citizen of the United States of America and the Commonwealth of Massachusetts, resides at 33 High Crest Park, Webster, Worcester County, Massachusetts.

11.    Defendant Town of Webster, (hereinafter the "Town"), is a municipal corporation located in Worcester County, Massachusetts.

12.    Defendant Robin Leal, (hereinafter "Leal"), is a natural person and is the Administrator of the Town of Webster. She resides at 84 Upper Gore Road, Webster, Worcester County, Massachusetts. Leal is sued both individually and in her capacity as Town Administrator of Webster.

13.    Defendant Richard Bergeron, Jr., (hereinafter "Bergeron"), is a natural person and a former Chief of Police of the Town of Webster. He resides at 107 Cotton Hill Road, Belmont, New Hampshire. Bergeron is sued both individually and in his capacity as the former Chief of Police of the Town of Webster.

14.    Defendant William Keefe, (hereinafter "Keefe"), is a natural person and the Chief of Police of the Town of Webster. He resides at 29 Hanson Road, Charlton, Worcester County, Massachusetts. Keefe is sued both individually and in his capacity as Chief of Police of the Town of Webster.

15.    Other individuals as yet unidentified are believed to have jointly and severally engaged in a pattern of antagonism and retaliatory conduct in cooperation and

concert with the above named Defendants. As identified, these individuals will be sued individually and in their official capacity, if any.

16.    Each Defendant is sued individually and in his or her official capacity. Relief is sought against each and all Defendants, as well as its or their agents, assistants, successors, employees and all persons acting in concert or cooperation with them or at their direction.

17.    The Defendants have been, are at present, or will be acting under color of authority and law of the Commonwealth of Massachusetts, or in active concert with such Defendants who are so acting.

FACTS GIVING RISE TO JOHN A. BOLDUC'S CAUSES OF ACTION

18.    Plaintiff, John A. Bolduc, was first employed by the Town as a police officer in March of 1995.

19.    The Defendant Bergeron was hired as Town of Webster Chief of Police in June of 1996.

20.    On or about October 19, 2001, Bolduc was appointed as a Provisional Sergeant, effective October 22, 2001.

21.    On June 30, 2002, Mark Stankiewicz (hereinafter "Stankiewicz"), in his capacity as Town Administrator, appointed Bolduc as a Sergeant with the Webster Police Department.

22.    On February 22, 2003, Bolduc was in the company of several other Town employees at the Colonial Club Restaurant in the Town of Webster. Those other employees included Deputy Chief Thomas Ralph (hereinafter "Ralph") of the Webster Police Department, Officer Brian Barnes (hereinafter "Barnes") of the Webster Police

Department, and several other Town employees. Barnes was in uniform. During the course of that luncheon, Barnes made racist remarks directed at African-Americans with whom he had come in contact.

23.    On or about March 4, 2003, Ralph expressed concern to Town Administrator Stankiewicz regarding the state of the Webster Police Department, particularly noting that Officer Barnes had been a disciplinary problem, but that Chief Bergeron had overridden his efforts to discipline Barnes through the chain of command of the Webster Police Department.

24.    Both Chief Bergeron and Officer Barnes had served together on the Quincy Police Department, prior to Bergeron becoming Chief of Police of the Town of Webster.

25.    On or about April 15, 2003, Ralph filed a formal written complaint with Webster Chief of Police Bergeron, directed at Officer Barnes' racist conduct. Ralph specifically noted that other Webster police officers had complained to him about Barnes' consistent use of racially derogatory statements. Ralph's complaint indicated that, on numerous occasions, members of the Webster Police Department had complained that Officer Barnes had referred to African-Americans as "niggers," to Asian-Americans as "chinks," and to Hispanic people as "spics." Ralph also complained to Chief Bergeron that Barnes was non-compliant with the racial profiling law, which required officers to state the race of the operator when they stop a vehicle.

26.    After Ralph handed him the Complaint, Defendant Bergeron ordered Ralph out of the building.

27.    Shortly thereafter, Chief Bergeron ordered Ralph to turn in his assigned vehicle.

28.    On or about April 15, 2003, Bolduc went to confer with Bergeron with respect to the pending Amato murder investigation to which he was assigned. Upon Bolduc entering Bergeron's office, Bergeron started to raise his voice and directed profanity at Bolduc, accusing Bolduc of displaying inappropriate loyalty to Ralph. Bergeron specifically said to Bolduc, "Your friendship, support and loyalty to the Deputy Chief is going to cost you." At that time, Bergeron showed Bolduc a copy of the formal written complaint that had been filed with Chief Bergeron by Deputy Chief Ralph. Bergeron accused Bolduc of having collaborated with Ralph with respect to the formal complaint that had been filed, which Bolduc denied.

29.    Bergeron then handed Bolduc the letter and instructed him to read it. Bolduc read the letter, then informed Chief Bergeron that this was the first he knew of the letter. After concluding the conversation with Bergeron, Bolduc left the station.

30.    On or about April 17, 2003, Ralph informed Bolduc that he was ordered by Bergeron to supply Bergeron with the names of all witnesses, in writing, to support his allegations in the complaint against Officer Barnes. Ralph informed Bolduc that he would be supplying Bergeron with Bolduc's name based on Bolduc's having overheard Barnes' remarks at the February 22, 2003 luncheon meeting at the Colonial Club.

31.    On or about April 17, 2003, Ralph informed Bolduc that his name would appear on a list of witnesses in a discrimination suit Ralph was filing against the Webster Police Department.

32.    On or about May 1, 2003, Ralph filed a discrimination claim against the Webster Police Department with the MCAD.

33.    On May 1, 2003, Bolduc stopped by Bergeron's office to brief him further on the Amato investigation. During that conversation, Bergeron asked Bolduc if he had ever heard Officer Barnes say anything racist. Bolduc indicated that he had. Bergeron responded angrily and ordered Bolduc to provide him a written statement with names and dates.

34.    On May 12, 2003, Bergeron came to Bolduc's office, located in the lower level of the Webster Police Station, and asked if Bolduc had produced a written narrative, as ordered, regarding Barnes' racist behavior. Bolduc informed him that he had, and gave it to Bergeron. A true and exact copy of the narrative is attached hereto, incorporated herein by reference and marked as Exhibit "D."

35.    When Bergeron read Bolduc's written narrative, Bergeron indicated that Bolduc was to be returned to uniformed patrol duty, effective immediately.

36.    On May 12, 2003, Bolduc was informed that his schedule of duty and working days was to be changed to nights, effective immediately, and that he was to be put back into rotation to uniform patrol duties.

37.    On or about May 14, 2003, Bolduc learned that John Stevens, a former Webster reserve police officer, was told by Bergeron that he would be reinstated if he was able to provide Bergeron with any negative information concerning Bolduc or Ralph.

38.    On or about May 19, 2003, Bolduc was informed via e-mail by Bergeron that he was to surrender the office that he had used for the last three years and relinquish all keys to Bergeron by the end of the business day. After losing his office, Bolduc

continued to perform duties as assigned, including duties as Department Domestic Violence Officer, which required him to maintain records at home.

39.     On or about April 16, 2003, Stankiewicz left his position as Administrator of the Town of Webster.

40.     On or about May 15, 2003, Bolduc filed a memorandum with Steven Boudreau (hereinafter "Boudreau"), then Webster Town Administrator, indicating that he intended to file a complaint with the MCAD, and asserting that he had been and continued to be the target of retaliation by Webster Police Chief Bergeron because he had been identified by Ralph as a witness in a pending MCAD investigation. The pending MCAD investigation to which he referred was Ralph's complaint filed on or about May 1, 2003.

41.     On or about May 15, 2003, Webster police officers J. Brooks and M. Keough informed Bolduc that they were questioned by Bergeron, who was seeking information about Bolduc mistreating prisoners.

42.     On or about May 19, 2003, Bolduc sent a second memorandum to Town Administrator Boudreau concerning retaliatory actions by Bergeron directed at Bolduc.

43.     On or about June 15, 2003, E. Burgess, a Town resident, was questioned by Webster police officer S. Novick and Bergeron, inquiring whether he had any negative information to provide regarding Bolduc.

44.     On June 16, 2003, Bolduc filed a complaint with the MCAD, alleging that the Webster Police Department and Chief Bergeron had subjected him to unequal terms and conditions of employment, in retaliation for being identified as a witness with respect to discrimination alleged by members of the Webster Police Department as asserted by

Ralph. The complaint filed with the MCAD specifically alleged that the Town and

Bergeron had violated Massachusetts General Laws Chapter 151B § 4 (4) and Title VII

of the 1964 Civil Rights Act, as amended.

45.    On or about June 16, 2003, Bolduc filed his MCAD complaint, alleging

that the Town Police Department had subjected him to unequal terms and conditions of

employment, retaliation and civil rights violations for being a witness in a discrimination

case against the Town Police Department and participating in and assisting in

proceedings opposing discriminatory practices.

46.    On or about July 14, 2003, Bergeron was placed on paid administrative

leave by Boudreau.

47.    On or about July 16, 2003, Keefe, in his capacity as Acting Chief of the

Webster Police Department, approached Boudreau, then Town Administrator, requesting

that he terminate Bolduc and Ralph.

48.    On or about August 15, 2003, Keefe, in his capacity as Acting Webster

Police Chief, again approached Boudreau, Town Administrator, to request that he

terminate Deputy Chief Ralph and Sergeant Bolduc. Boudreau refused.

49.    On or about October 1, 2003, Leal was appointed as Town Administrator

by a two in favor and one opposed vote by the Town Select Board, with two of five

members of the Board absent, without notice of an appointment motion, and before all

candidates for the position were interviewed as agreed by the Select Board.

50.    On or about December 10, 2003, Deputy Chief Ralph and Bolduc were

requested by R. Miller, a member of the Town Select Board, to meet with him at his

personal business location. Miller indicated that he was conferring with Ralph and

Bolduc in his capacity as Chairman of the Select Board on behalf of Town Administrator Leal to ask that they resign from the Webster Police Department. Miller stated that Leal promised "glowing" recommendations if they resigned. Both Ralph and Bolduc refused to resign. At the conclusion of the meeting of Ralph and Bolduc with Miller, R. Regis, another member of the Select Board, entered and asked if their resignations had been tendered. Both Ralph and Bolduc indicated that their resignations had not been tendered. Regis then stated to Bolduc that Leal told him she intended to fire Bolduc after a hearing.

51.    On December 12, 2003, Bolduc testified on behalf of Ralph at a disciplinary hearing conducted by Leal as Hearing Officer in her capacity as Town Administrator. The disciplinary hearing was generated by charges filed by then retired Webster Police Chief Bergeron against Ralph, as a result of the matters on or about April 15, 2003 in which Ralph had alleged that Barnes was engaging in racist activity.

52.    Forty-eight hours after Bolduc testified on behalf of Ralph at his disciplinary hearing, Keefe, in his capacity as Acting Police Chief for the Town of Webster, was directed by Leal to conduct an internal investigation targeting Bolduc's performance of duty, which investigation was unlimited in scope and time.

53.    On December 12, 2003, Bolduc was placed on paid administrative leave pending the outcome of an investigation for his use of "excessive and unnecessary force" involving incidents previously investigated by Ralph in his capacity as Deputy Chief in February and November of 2002. Ralph's investigations found no improper conduct by Bolduc. The investigation was also to review an arrest in which Bolduc participated, which occurred on November 30, 2003.

54.     On or about January 5, 2004, Bolduc was ordered to attend a "fit for duty exam" with Leo Polizotti, M.D. (hereinafter "Polizotti"). Before the exam, Keefe, in his capacity as Acting Chief of the Webster Police Department, sent a letter to Polizotti with negative information, and characterizing Bolduc as being manipulative. He further warned Polizotti of Bolduc's high intelligence, ability to deceive, and ability to perform well on tests. Leal also telephoned Polizotti to inform him that Bolduc had an anger problem about which the Town already was aware.

55.     On January 14, 2004, Bolduc was informed by Polizotti of Acting Chief Keefe's letter and of Leal's phone call to him. He further indicated that Keefe supplied only negative information for the Polizotti review. Polizotti told Bolduc that he believed the Town was setting him up.

56.     On or about February 1, 2004, Leal informed Regis, a member of the Select Board of the Town of Webster, that she had enough to terminate Bolduc. Regis informed Bolduc of the information provided to him by Leal.

57.     On or about February 4, 2004, Acting Police Chief Keefe requested that T. Pycell, a Webster police officer, amend an Affidavit filed by him to read that Bolduc had struck a prisoner more than once, which amendment would contradict an earlier statement by Pycell.

58.     On or about February 4, 2004, Acting Chief Keefe interviewed paramedics G. Milliard and Wrubleski, taking written statements from each of them with respect to the November 2003 arrest being investigated (Greenwood matter). After they had signed their statements, Keefe altered the statements to include negative information about Bolduc.

59.    On or about February 23, 2004, the Town Select Board unanimously voted to award Bolduc a commendation for his work on the Amato murder investigation.

60.    On or about February 25, 2004, Polizotti left a message on Bolduc's answering machine that Leal and Acting Chief Keefe had told him that witnesses had recanted their statements in the Greenwood matter, which information was untrue.

61.    On or about March 1, 2004, Leal requested that each member of the Webster Select Board individually rescind the Bolduc commendation related to the Amato case, because it would weaken her position at the disciplinary hearing and in matters pending before the MCAD.  Two members of the Webster Select Board, Martell and Dowgiewicz, agreed to change their votes and the award to Bolduc was rescinded.

62.    On or about March 1, 2004, Keefe, in his capacity as Webster Police Chief, sent a letter to Leal recommending Bolduc's termination.  Keefe did not interview any witnesses with exculpatory or positive information with respect to Bolduc's conduct with respect to the specific incidents being investigated, or as a member of the Webster Police Force in general.

63.    On March 9, 2004, the Webster Police Department delivered to Bolduc information requested by his attorney, months earlier, to be used at the disciplinary hearing for Bolduc, fewer than twelve hours before the start of the hearing.

64.    On or about March 9, 2004, counsel for Bolduc was informed that the Town had lost Bolduc's personnel file.

65.    On March 10, 2004, Leal, as Hearing Officer, conducted a disciplinary hearing for Bolduc, arising from allegations of prisoner mistreatment.  Two of the allegations had previously been investigated, close in time to the incidents, by Deputy

Chief Ralph and were found to have been unsubstantiated. None of the prisoners who were referred to in the disciplinary hearing allegations had filed a complaint with the Webster Police Department or any other agency with respect to Bolduc's conduct before, during, or after their arrests.

66.     On March 19, 2004, Town Administrator Leal terminated Bolduc from the Webster Police Department.

67.     On or about April 15, 2004, Regis met with Ralph and P. O'Donald and informed them that Leal had told him prior to the termination hearing that she fully intended to fire Bolduc, but had to conduct the hearing to make it look good.

68.     Since on or about April 15, 2003, when Bolduc corroborated some of the allegations that were asserted by Deputy Chief Ralph in Ralph's formal complaint to Bergeron regarding Barnes, Bolduc has been exposed to a concerted pattern of antagonism and retaliatory conduct by the Town, Bergeron, Leal, Keefe, and others as yet unidentified in concert with them.

69.     Coincident with Bolduc's corroboration and identification of Ralph's statements, and identification of him as a witness to racist behavior by Officer Barnes, Defendants Town of Webster, Bergeron, Leal, and Keefe initiated a systematic pattern of unfair and abusive behavior aimed at chilling Bolduc's exercise of his First Amendment rights and his participation both as a corroborating witness and a supportive witness in the disciplinary hearing directed at Acting Chief Thomas Ralph. The behavior included, but was not limited to, the removal of Bolduc from the Amato murder investigation and reassignment to normal patrol duties, the termination of assigned office space for Bolduc in his capacity as Sergeant of the Webster Police Force, the reopening of previously

investigated matters related to Bolduc's conduct in the course of participating in the arrest of prisoners with other officers who were not subjected to investigation, and the destruction of Bolduc's personnel file. These actions by the Defendants jointly and severally were engaged in for the purpose of retaliating against Bolduc and terminating him from the Webster Police Department for his support of Ralph and his corroboration of the racist behaviors of Officer Barnes. From on or about April 15, 2003 through March 19, 2004, the Defendants have jointly and severally, and in concert, conspired to and continued a pattern of retaliatory, unfair and abusive conduct aimed at retaliating against Bolduc for asserting his First Amendment rights, corroborating the racist behavior of Barnes alleged by Ralph, and for Bolduc's filing a complaint with the MCAD. The Defendants' joint and several conduct, to include the reopening of the investigations previously conducted by Deputy Chief Ralph, constituted an unprecedented review of already closed investigations and a departure from Webster Police Department policy. The reinvestigated incidents have been used to assert that Bolduc does not qualify for retention by the Webster Police Department, which facts are known to the Defendants to be untrue and contrary to evidence that was both in their possession and available to them.

70.    The Defendants jointly and severally agreed, prior to the conduct of Bolduc's disciplinary hearing, to terminate Bolduc, attempted to conjure and fabricate negative evidence, and limited the evidence considered to evidence that was exclusively detrimental to Bolduc. The Defendants conspired to provide Polizotti, the individual assigned to conduct a "fit for duty examination," with false and negative information that would be detrimental to Bolduc.

71.     From April 15, 2003 to March 19, 2004, the Defendants jointly and severally, and in concert with the Town of Webster, have continued a pattern of retaliatory, unfair and abusive conduct aimed at chilling Bolduc's First Amendment rights. They conducted a detailed and unprecedented review of the incidents previously investigated by Ralph, which review they used to assert that Bolduc is not qualified for retention as a Webster police officer and led to his termination. In the course of conducting their investigation, the Defendants jointly and severally altered or destroyed records in the possession of the Town of Webster that would have corroborated Bolduc's excellent performance as a Webster police officer from the date of hire to the date of his termination.

72.     Defendant Town of Webster and Defendant Bergeron vociferously disagreed with and actively opposed Bolduc's corroboration related to the racist behavior of Officer Barnes. Since on or about May 1, 2004, and for a period of time currently unknown to Bolduc, the Defendants Town of Webster, Bergeron, Keefe and Leal, have unlawfully agreed among themselves to punish Bolduc for expression of his opinions with regard to Barnes' racist behavior, his corroboration of the racist behavior asserted by Deputy Chief Ralph in his complaint of April 15, 2004, and for his support of Deputy Chief Ralph at a disciplinary hearing directed at him because of his complaints regarding Officer Barnes' racist behavior.

73.     Pursuant to and in furtherance of the aforesaid conspiracy, the Defendants, Town of Webster, Leal, Bergeron and Keefe, acted to cause the removal of Bolduc from his position as a Webster police officer. To accomplish this purpose, the Defendants asserted that Bolduc had behaved in a manner inconsistent with proper prisoner handling

on three occasions, which assertions the Defendants jointly and severally knew to be untrue. In the course of asserting those matters, the Defendants jointly and severally reached a determination to terminate Bolduc, and, prior to the conduct of his disciplinary hearing, tampered with statements in evidence previously submitted by witnesses to those incidents, and conjured up other evidence known by them to be untrue, denying him equal protection and due process of law.

74. Defendant Leal, in furtherance of the conspiracy of all of the aforesaid Defendants, caused the Select Board of Webster to rescind an agreement on their part to award Bolduc a commendation for his performance on the Amato murder investigation.

75. Since on or about May 1, 2003, and for a period of time currently unknown to Bolduc, Defendants have unlawfully agreed among themselves to punish Bolduc for corroboration of the racist behavior of Officer Barnes as asserted by Deputy Chief Ralph in his formal complaint of April 15, 2003, to prevent Bolduc from corroborating information asserted by Ralph in his formal complaint and in his MCAD complaint, and to prevent Bolduc from testifying credibly with respect to the racist behavior of Officer Barnes observed by him.

76. Pursuant to and in furtherance of the aforesaid conspiracy, the Defendants determined to cause the termination of Bolduc from his position as a Webster police officer.

77. Defendants' concerted and joint and several actions leading to the termination of Bolduc were undertaken pursuant to the aforesaid unlawful agreement, in order to retaliate against and punish Bolduc for the exercise of his freedom of speech as

protected by the First Amendment of the United States Constitution and to attempt to prevent further exercise of those rights.

78.    Defendants Leal and Keefe deliberately and maliciously provided the individual assigned to conduct a "fit for duty exam" of Bolduc with information on an ex parte basis, which they knew to be false and misleading, to wit, that Bolduc had an anger problem and was manipulative. Their actions were taken in order to deprive Bolduc of a fair and impartial review, in violation of his rights to due process and equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution.

79.    Bolduc avers that, had he been given a fair and impartial hearing in accordance with basic and elemental due process, he could demonstrate with substantial and credible evidence that the failure to continue his employment as a Webster police officer was arbitrary, capricious and unlawful, and that his termination was the result of the exercise of his constitutional rights and was unrelated to his performance as a Webster police officer or the needs of the Webster Police Department.

80.    No real question existed as to Bolduc's ability to perform suitability as a Sergeant of the Webster Police Department within the actual structural needs of the Webster Police Department.

81.    All of the actions of the Defendants, the Town of Webster, Bergeron, Leal, Keefe and as yet unidentified conspirators, regarding Bolduc's termination were taken with the knowledge and approval of the Select Board of the Town of Webster.

82.    As a proximate result of the illegal actions of the Defendants as alleged above, Bolduc has been deprived of his employment as an officer of the Webster Police Department on or about March 19, 2004, and has and will continue to suffer a loss of

income. Bolduc has already suffered loss of reputation and opportunity to pursue his chosen profession.

## CAUSES OF ACTION

83. Paragraphs 1 – 82 are hereby incorporated in and made a part of Counts I through VI, as if fully stated therein.

## COUNT I
### (42 U.S.C. § 1983)

84. The Defendants, acting under color of state law, jointly and severally deprived Bolduc of civil rights guaranteed by the First, Fifth and Fourteenth Amendments to the United States Constitution, in that the actions, including, but not limited to, the termination of Bolduc's employment on March 19, 2004, were intended to and did in fact punish and retaliate against Bolduc for the exercise of his freedoms of speech, association, and inquiry, were intended to and did deny him substantive and procedural due process, and were intended to and did deny him the privileges and immunities secured by the Constitution and laws of the United States, all in violation of 42 U.S.C. § 1983.

## COUNT II
### (42 U.S.C. § 1985)

85. The actions of the Defendants and each of them violated the First, Fifth and Fourteenth Amendments to the United States Constitution, in that, by acting in concert as described above, they have deprived Bolduc of his liberty interests in free speech and association and of his protected property interest in his occupation, without due process and equal protection, specifically, the decision to terminate Bolduc's employment as a Webster police officer on or about March 19, 2004, which termination:

a. was based upon invidious, race-based animus to retaliate against Bolduc for his refusal to ignore racist conduct by a fellow officer and for his support of the investigation of complaints of racism made by then Deputy Chief Ralph; and

b. was accomplished by two or more of the Defendants acting in concert and pursuant to invidious, race-based and class-based animus, and the purpose of which was to obstruct the due course of justice in Massachusetts, a Commonwealth of the United States, all in violation of 42 U.S.C. § 1985.

## COUNT III
### General Laws Chapter 151B

86. The actions of the Town of Webster, and the Defendants jointly and severally as set forth above, constitute termination, retaliation, intimidation, and aiding and abetting, in violation of General Laws Chapter 151B § 4, paragraphs 4, 4A, and 5.

87. As a direct and proximate result of those acts, Bolduc has been damaged and continues to be damaged.

88. The Town of Webster and the Defendants jointly and severally are liable to Bolduc for the full amount of his damages.

## COUNT IV
### Title VII

89. The actions of the Town as set forth above constitute retaliation and intimidation, in violation of 42 U.S. C. 2000e § 1 et seq. (Title VII).

90. As a direct and proximate result of those acts, Bolduc has been damaged and continues to be damaged.

91.    The Town of Webster, and the Defendants jointly and severally, are liable to Bolduc for the full amount of his damages.

## COUNT V

92.    The actions of the Defendants and each of them constitute a violation of General Laws Chapter 149 § 185 et seq., the Whistleblower Act.

93.    The Plaintiff gave due notice to the Defendants of the allegations of official misconduct before he filed this claim.

94.    As a direct and proximate result of those actions, Bolduc has suffered loss of employment and benefits, emotional distress and other damages and losses.

## COUNT VI
### General Laws Chapter 12 §§ 11H and I

95.    The actions of the Defendants and each of them deprived Bolduc of his civil rights as guaranteed by the First and Fourteenth Amendments of the United States Constitution and Articles I and X of the Declaration of Rights of the Commonwealth of Massachusetts, all in violation of Massachusetts General Laws Chapter 12 § 11I.

96.    As a direct and proximate result of the actions of Defendants and each of them, Bolduc has suffered emotional distress, lost wages and benefits, and other losses and damages.

WHEREFORE, the Plaintiff respectfully requests the Court to:

a.    Issue an Order restoring Plaintiff to his employment and enjoining and restraining the Defendants, their agents, assistants, successors, employees, attorneys and all persons acting in concert with them or at their direction from further violating the rights, privileges, and immunities

guaranteed Plaintiff under the Constitution of the United States of America and the Massachusetts Declaration of Rights, including, but not limited to, the adverse alteration of the terms and conditions of his employment;

b.      Grant Plaintiff compensatory damages for his injuries, including, but not limited to: loss of wages and benefits resulting from his termination from the Webster Police Department; great emotional anguish and mental distress; inability to transact his business; and, other divers injuries and damages;

c.      Grant the Plaintiff such punitive damages against each Defendant as the law may allow;

d.      Grant Plaintiff his costs of this action, including reasonable attorney's fees and interest;

e.      Grant such other relief that this Court may deem just and proper.

## CLAIM OF JURY TRIAL

The Plaintiff claims trial by jury.

Date:

*Feb 14, 2005*

Respectfully submitted,
John Bolduc,
By his attorneys,

John J. Green, Jr., BBO# 209020
Harry L. Miles, BBO# 345800
GREEN, MILES, LIPTON &
FITZ-GIBBON
77 Pleasant Street, P.O. Box 210
Northampton, MA  01061-0210
Telephone: (413) 586-8218
Fax: (413) 584-6278

EXHIBIT "A"

TO:    Steven Boudreau, Webster Town Administrator

FROM:   Webster Police Sergeant John Bolduc, Jr.

DATE:   May 15, 2003

Re:    Intimidation complaint

Sir:

This is to inform you that I have filed an intimidation complaint with the Massachusetts Commission Against Discrimination (MCAD). I believe that I have been and continue to be the target of retaliation by Webster Police Chief Richard Bergeron, Jr., as I have been identified as a witness in a pending MCAD Investigation.

I am also appealing to you for relief as I anticipate further negative actions on the part of Chief Bergeron. Please consider the attached three-page narrative as evidence of said retaliation.

I will make myself available to you should you want to speak with me or if you require more information. You can reach me at 508-943-9907 (home) or 508-926-1078 (cell).

## Complaint Narrative

On Tuesday 04/15/03 at approximately 15:35 hours I stopped at Chief Bergeron's office. His office door was open. He was seated at his desk. I lightly knocked on his door as I entered his office. As I entered I asked, "Chief, can I have a couple of minutes?"

He immediately stood up and removed his eyeglasses. It was obvious to me by his appearance and demeanor that he was very angry. As I stood across the desk from him, he snapped, "You got no fuckin' loyalty. You walk around with your tongue stuck up the Deputy Chief's ass because you think he's going to be the fuckin' Chief and you're going to end up with a good job. Let me tell you something, he's not going to be the Chief here. He's got no balls. He sends out emails, memos, and policies then he runs away and fuckin' hides. And you, you'll never be a Chief. You got more balls than you got brains. I got one guy with no balls and I got one guy with too much balls. Your friendship, support, and loyalty of the Deputy Chief is going to cost you."

I did not respond right away as I was taken by surprise. Chief Bergeron then picked up a letter from his desk. He held it in front of me. He asked, "Did you know about this? You must have collaborated on this. He didn't do this on his own. He must have told you about this."

I responded with, "Chief, what is it?"

He then handed me the letter and instructed me to read it. As I read it I learned that it was a letter from Deputy Chief Thomas Ralph to Chief Bergeron regarding Officer Brian Barnes. The nature of the letter was a complaint against Officer Barnes outlining incidents of racial bigotry. I informed Chief Bergeron that this was the first I knew of the letter. Chief Bergeron then informed me that the language used in the letter was "downtown." He took exception with a section in the letter, which requested a response within fourteen (14) days of receipt. He then informed me, "That's a Stankiewicz trick."

My only response was, "Chief, I don't know."

He was also angry because he stated that he could not contact Deputy Chief Ralph after he (Ralph) gave him (Bergeron) the letter. I then tried to explain that Deputy Chief Ralph, Officer Derrick Stokes, and I had met with John Bish at his (Bish) office in the East Brookfield Courthouse, then the four of us went to lunch together, and that East Brookfield and Spencer are out of portable radio range and provides an incredibly poor Nextel signal. Chief Bergeron then called me a liar and told me to not try to cover for him (Ralph).

It was at that point that the conversation became unpleasant from both of us. The conversation, heated at times, lasted until approximately 18:05 hours. After exiting the Chief's office, I left the station.

1

On or about Thursday 04/17/03 Deputy Chief Thomas Ralph informed me that he was ordered to supply Chief Bergeron the names of all witnesses, in writing, in the complaint against Officer Barnes. He further informed me that my name would appear on the list as a witness.

On Thursday 05/01/03 at approximately 16:30 hours I stopped at Chief Bergeron's office to brief him on an investigation that Officer Stokes and I were working. I knocked on his door, which was open, however this time I asked permission to enter before doing so. He told me to enter. Once inside he said, "So I guess you feel threatened huh? I understand that I threatened you? How did I threaten you?"

I reminded him that he informed me that my friendship, support, and loyalty to Deputy Chief Ralph were going to cost me. He then said, "Oh yeah? Cost you how?"

I replied, "I don't know Sir. Those are your words, not mine."

He then said, "So you think Brian Barnes is a racist. Have you ever heard him say anything racist? Labeling someone a racist is a big problem. Going to paper and calling someone a racist is a big problem. If I asked you if you ever heard Brian Barnes make any racial comments, what would you say?"

I answered, "Yes. I have."

He snapped, "Then you're the only one. You're the only person I have talked to that has said yes. I've talked to people at the school, business people, everyone. You're the only person. I want a written statement. I want names, I want dates, I want times. I want it in writing."

I then said, "Chief, there are other people, but they're not going to tell you. People are afraid of you. People are afraid that if they say yes, you'll jump all over them."

The Chief replied, "Oh yeah? Who? Give me some names. Like who?"

I said, "Your secretary (Lee Olmstead), Pam Leduc (Town Accountant), Heidi, though she'd never admit it (Town Administrator's Secretary), Phil Charbonneau (Junior High School Principle)."

He then ordered me to put it in writing.

On Monday 05/12/03 at approximately 14:30 hours Chief Bergeron came to my office located in the lower level of the station. As I was conversing with Officer Stokes, Chief Bergeron entered and said, "John, I told you to write a narrative regarding the complaint against Brian Barnes. Did you do it?"

I informed him that I had, I took it from a folder, and handed it to him.

He read it and then said, "Billy (Sgt William Keefe) complained to me that he is having scheduling problems. I'm pulling both of you back into the rotation (meaning that Stokes and I are to report to our uniformed patrol duties).

I responded, "Okay. Effective when Sir?"

He replied, "Immediately." He then left my office.

Officer Stokes then said, "It's a good thing you did it. He didn't look happy."

*It should be noted that I had a conversation with Sgt. Keefe on Thursday 05/08/03 about the rotation schedule. At that time we agreed that if there were a day that the 11:00pm to 7:00am shift was short personnel, Stokes and I would report for duty on said shift and then resume our investigation when able.*

*It should be further noted that the aforementioned investigation is the Andrew Amato case. It is a 25 year-old missing child cold case. I have been the lead investigator on this case since 1997. It has been past practice that as new leads develop; I work the case until said leads are exhausted. It is at this time that Officer Stokes and I have a series of confessions and a general burial site. This is the most advanced this case has ever been to date.*

After I had left the station, I telephoned Chief Bergeron and asked him if Officer Stokes could finish out the week on the Amato case and that I would return to uniform patrol duties. He agreed.

On Wednesday 05/14/03 I learned that Chief Bergeron and Webster Reserve Police Officer Alfred Beland met with John Stevens. Stevens is a former Webster Reserve Police Officer  Stevens is currently employed as a Massachusetts State Police Dispatcher and is a Southbridge (MA) Reserve Police Officer. Stevens will testify that Chief Bergeron and Beland offered to reinstate Stevens as a Webster Reserve Officer if he was able to provide them with any negative information concerning Deputy Chief Ralph or myself.

I am convinced that the actions of Police Chief Richard Bergeron are strictly retaliatory against me for bearing witness against Officer Brian Barnes, for supporting Deputy Chief Thomas Ralph, and further, that the information contained in the aforementioned narrative clearly support such claim.

Respectfully submitted,




Sgt. John Bolduc, Jr.

2

EXHIBIT "B"

**Discrimination Complaint**
**Massachusetts Commission Against Discrimination And EEOC**

RECEIVED

FEPA No.: 03-23-01779  Filing Date: 6/14/53
EEOC No.: 16CA302081  Violation Date: April 15, 2003

JUN    2003

COMMISSION AGAINST
DISCRIMINATION/SPRINGFIELD

**Name of Aggrieved Person Or Organization:**
John Bolduc            **Telephone Number:** (508) 943-9907
P.O. Box 326           **Home:**
Webster, MA  01570     **Business:** (508) 326-1078

**Named is the Employer, Labor Organization, Employment Agency, or State/Local**
**Government Agency Who Discriminated Against Me:**
Webster Police Department      **Number of Employees:** 25+
57 Thompson Road               **Telephone Number:** 508-943-1212
Webster, MA 01570

Webster Police Chief
Richard Bergeron Jr.
57 Thompson Rd.
Webster MA 01570

**Cause of Discrimination Based On:** Retaliation
**The Particulars Are:**

On May 12, 2003, the Webster Police department has subjected me to unequal terms and conditions in my employment in retaliation for being a witness in a discrimination case against the Webster Police Department. Police Chief Bergeron, has interfered with my civil rights, granted and protected by law, by changing my rotation schedule from days to nights in the middle of an investigation. Chief Bergeron has created a hostile environment with intimidation and unequal treatment. I believe the respondent's conduct violates M.G.L.C. 151B s4(4), (4a) and Title VII of the 1964 Civil Rights Act, as amended.

√1.) I have been a police officer with the Webster Police Department since March 1995. I have held the rank of Sergeant since October 2001.

√2.) On April 15, 2003, I went to see Chief Bergeron and he immediately started to raise his voice, use profanity directed against me, and threaten me.

3.) On April 17, 2003, Deputy Chief Thomas Ralph, informed me that my name would appear on the list as a witness in his discrimination suit against the Webster Police Department.

4.) On May 1, 2003, Webster Deputy Police Chief, Thomas V. Ralph, filed a discrimination claim against the Webster Police Department alleging race discrimination.

5.) On May 12, 2003, I was informed that my scheduled duty of working days was changed to nights, effective immediately. Being pulled back into rotation to uniformed patrol duties during an ongoing investigation is not common practice.

6.) On May 14, 2003, I learned that John Stevens, a former Webster Reserve Police Officer, was told by Chief Bergeron that he would be reinstated if he was able to provide the chief with any negative information concerning myself or deputy chief Ralph.

7.) On or about May 15 2003, officer Brooks and officer Kehoe of the Webster Police Department, informed me that Chief Bergeron had questioned them as to whether I was involved at any time in any mistreatment of prisoners that they knew of.

**8.)** On May 19,2003, I was informed via e-mail by Chief Bergeron that I was to exit the office I have had for the last three years, and relinquish all keys to him by end of business day. I am a patrol supervisor and have investigative duties. I am also the Domestic Violence Coordinator, Liaison Sergeant to the Reserve Police Unit, and the Department Training officer. Since losing my office, I have been forced to continue performing my duties from my home. Patrolmen lower in rank have an office to work out of. Being home for too long a period of time on duty is against regulations. I am concerned that I will lose my job as a result of this.

**9.)** I believe the reason these actions are being taken against me are in retaliation for participation and assisting in proceedings of opposing discriminatory practices.

**I ALSO WANT THIS CHARGE FILED WITH EEOC:** xx
**I WILL ADVISE THE AGENCIES IF I CHANGE MY ADDRESS OR TELEPHONE NUMBER AND I WILL COOPERATE FULLY WITH THEM IN THE PROCCESSING OF MY CHARGE IN ACCORDANCE WITH THEIR PROCEDURES.**
**I SWEAR OF AFFIRM THAT I HAVE READ THIS COMPLAINT AND THAT IT IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.**

Sgt. John Bolduc, Jr.

**SWORN TO AND SUBSCRIBED BEFORE ME THIS** 1st **DAY OF** June ,
**2003**

**NOTARY PUBLIC** Sherri L Condos

**My Commission Expires:**  /  /

SHERRIE L. CONDOS
Notary Public
Commonwealth of Massachusetts
My Commission Expires
June 26, 2009

## U.S. Equal Employment Opportunity Commission

Boston Area Office
JFK Federal Building, Room 475
Boston, MA 02203
Phone: (617) 565-3200
TDD: (617) 565-3204
Fax: (617) 565-3196

EEOC Charge No: 16CA302081

NOTICE
This office has been sent a copy of the Complaint of employment discrimination you filed with the Massachusetts Commission Against Discrimination (MCAD), and in order to preserve your federal rights the above referenced charge number has been assigned.

YOUR FEDERAL RIGHTS AND EEOC PROCEDURAL REGULATIONS
( ) Title VII of the Civil Rights Act of 1964, as amended (Title VII)-
If you wish to file a private lawsuit in Federal District Court with your own private attorney, prior to the MCAD's completion of its investigation, you may do so by requesting a NOTICE OF RIGHT TO SUE from the EEOC. Once this request for you to file a private lawsuit is granted, your EEOC charge and possibly the MCAD complaint will be closed. When you receive the NOTICE OF RIGHT TO SUE, it is only valid for ninety (90) days.

( ) The age discrimination in employment act of 1967, as amended (ADEA)-
If you filed your complaint within 300 days of the alleged act of discrimination you can file a private lawsuit under the ADEA any time 60 days after the date you filed your complaint, or within 90 days of your receipt of notice that the EEOC has completed action on your complaint.

( ) The Americans with Disabilities Act of 1990 - Same as Title VII.

The Massachusetts Commission Against Discrimination will investigate and resolve your complaint. If you have any questions regarding the status of your complaint, contact the MCAD location where you filed the complaint. If you want EEOC to conduct a review of the MCAD's Final Determination and Order, you must make this request in writing to the above address within 15 days of the MCAD's final determination, otherwise, we will accept the MCAD's final action as our own. EEOC's regulations require that you inform us and the state agency, in writing, of any change in or prolonged absence from your current address.

If you do not wish to file a private lawsuit on your own, and wish the Massachusetts Commission Against Discrimination to continue with its investigation of your complaint, there is no need for you to take any action now. The MCAD will in the near future inform you of their findings.

EEOC Charge Number 16CA302081, EEOC Transmittal Letter to Complainant

EXHIBIT "C"

# GREEN, MILES, LIPTON & FITZ-GIBBON

ATTORNEYS AT LAW
77 PLEASANT STREET
POST OFFICE BOX 210
NORTHAMPTON, MASSACHUSETTS 01061-0210
(413) 586-8218
FAX (413) 584-6278

JOHN J. GREEN, JR.
HARRY L. MILES
ROGER P. LIPTON
JOHN H. FITZ-GIBBON

SUSAN L. MILES
BRIAN L. BLACKBURN
JON HEYMAN
(GEOFFREY B. WHITE - Retired)

August 5, 2004

**FIRST CLASS AND RETURN
RECEIPT REQUESTED**

Town of Webster
Board of Selectmen
P.O. Box 339
Webster, MA  01570

RE:    John Bolduc: Notice pursuant to M.G.L. c. 149, § 185 (c)(1)

To the Select Board:

John Bolduc, formerly an officer of the Webster Police Department, has retained this

office to represent him with respect to the claims he has against the Town of Webster, as

enumerated below.  This notice is provided to the Town of Webster pursuant to Massachusetts

General Laws Chapter 149, § 185 (c)(1).  The purpose of this notice is to bring to the attention of

the Board activities, policies and practices of the Webster Police Department and the Town

Administrator which constitute violations of law.  It is our intent to provide the Town an

opportunity to rectify those unlawful practices, prior to undertaking litigation before

Massachusetts and United States Courts.  Unless resolution is achieved, we will initiate litigation

for the purposes of correcting the unlawful policies and practices and to obtain relief for John

Bolduc.  We contend employees of Webster retaliated against John Bolduc because he

substantiated racist public behavior by a uniformed officer of the Webster Police Department. This <u>notice</u> constitutes an opportunity for the Town to reverse its unlawful adverse employment actions against John Bolduc; those actions, enumerated below, include his termination from the Webster Police Department by the Town of Webster, acting by and through its Town Administrator.

Bolduc alleges that the following actions and activities of the Webster Police Department and its agents constituted violations of Massachusetts and Federal law, both in practice generally and specifically as applied to him:

1)   The failure of the Police Department to comply with the administrative requirement of recording the race of individuals detained by the police for traffic violations, which is intended to deter racial profiling;

2)   The failure of the Police Department to discipline officers for conduct unbecoming an officer, i.e. making overly racist remarks while in uniform, on duty, and in a public place;

3)   The taking of adverse retaliatory employment actions against officers who either directly reported or substantiated racist behavior on the part of members of the Webster Police Department.  Specifically as to Sergeant John Bolduc:  On May 12, 2003, he complied with Chief Bergeron's direct order and provided written substantiation and confirmation of Officer Brian Barnes' overtly racist conduct and conduct unbecoming an officer. As a result, Chief Bergeron, Acting Chief Keefe, and Town Administrator Leal unlawfully retaliated against him as follows:

a)   His duty status was changed from day shift to night shift;

b)    His assignments were changed, e.g., he was taken off an ongoing murder investigation and instead assigned to uniformed patrol;

c)    He was ordered to vacate his assigned office space and relinquish all keys (he was the only sergeant on the force without assigned office space);

d)    Two closed investigations regarding prisoner handling by Bolduc were re-opened by Town officials with the intent of effecting a retaliatory discharge;

e)    Town officials solicited unfavorable information about Bolduc with the intent of effecting a retaliatory discharge;

f)    He was denied a commendation regarding a highly successful murder investigation;

g)    He was targeted for discharge from the Webster Police Department prior to the conduct of a fair and impartial hearing; and

h)    He was wrongfully discharged from the Webster Police Department on March 19, 2004.

It is Bolduc's intention to assert claims for relief before the Massachusetts and Federal Courts pursuant to MGL c. 149, §185, 42 U.S.C. § 1983, and such other state and federal statutes and regulations as may be applicable to the facts of this case. The Town of Webster may avoid litigation against it, its officers, agents and employees by: (1) ensuring that the officers of the Town of Webster comply with the requirements of the Commonwealth to monitor and prevent

racial profiling; (2) disciplining officers who display overtly racist conduct while on duty and in uniform; and (3) by the immediate reinstatement of John Bolduc to his position as a Sergeant with the Webster Police Department, with retroactive pay and benefits from March 19, 2004 to the present and the payment of his Attorney's fees as incurred to date.

In addition to providing notice pursuant to M.G.L. c. 149, § 185, this letter proposes a settlement of disputed claims. This letter is not intended to waive any cause of action or claim for relief which the law allows.

Very truly yours,

John J. Green, Jr.

JJG/khr

cc:    John Bolduc



2. Article Number
(Transfer from service label)    7003 1680 0001 1894 5807

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

JS 44 (Rev. 3/99)

05-40030

# CIVIL COVER SHEET

The JS-44 civil cover sheet and information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## 1. (a) PLAINTIFFS

John A. Bolduc, Jr.

## DEFENDANTS

Town of Webster, Robin Leal, Richard Bergeron, and William Keefe

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ Worcester
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ Worcester
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John J. Green, Jr., Esq., of Green, Miles, Lipton & Fitz-Gibbon
77 Pleasant Street, P.O. Box 210
Northampton, MA  01061          (413) 586-8218

ATTORNEYS (IF KNOWN)

Kopelman & Paige, P.C.
31 St. James Avenue
Boston, MA  02116

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- **X** 3 Federal Question (U.S. Government Not a Party)
- 2 U.S. Government Defendant
- 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation |  | 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance<br>120 Marine<br>130 Miller Act<br>140 Negotiable Instrument<br>150 Recovery of Overpayment & Enforcement of Judgment<br>151 Medicare Act<br>152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>153 Recovery of Overpayment of Veteran's Benefits<br>160 Stockholders' Suits<br>190 Other Contract<br>195 Contract Product Liability | **PERSONAL INJURY**<br>310 Airplane<br>315 Airplane Product Liability<br>320 Assault Libel & Slander<br>330 Federal Employers' Liability<br>340 Marine<br>345 Marine Product Liability<br>350 Motor Vehicle<br>355 Motor Vehicle Product Liability<br>360 Other Personal Injury | **PERSONAL INJURY**<br>362 Personal Injury - Med. Malpractice<br>365 Personal Injury - Product Liability<br>368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>370 Other Fraud<br>371 Truth in Lending<br>380 Other Personal Property Damage<br>385 Property Damage Product Liability | 610 Agriculture<br>620 Other Food & Drug<br>625 Drug Related Seizure of Property 21 USC 881<br>630 Liquor Laws<br>640 R.R. & Truck<br>650 Airline Regs<br>660 Occupational Safety/Health<br>690 Other | 422 Appeal 28 USC 158<br>423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>820 Copyrights<br>830 Patent<br>840 Trademark | 400 State Reapportionment<br>410 Antitrust<br>430 Banks and Banking<br>450 Commerce/ICC Rates/etc.<br>460 Deportation<br>470 Racketeer Influenced and Corrupt Organizations<br>810 Selective Service<br>850 Securities/Commodities/ Exchange<br>875 Customer Challenge 12 USC 3410 |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | 891 Agricultural Acts<br>892 Economic Stabilization Act<br>893 Environmental Matters<br>894 Energy Allocation Act<br>895 Freedom of Information Act |
| 210 Land Condemnation<br>220 Foreclosure<br>230 Rent Lease & Ejectment<br>240 Torts to Land<br>245 Tort Product Liability<br>290 All other Real Property | 441 Voting<br>442 Employment<br>443 Housing/ Accommodations<br>444 Welfare<br>**X** 440 Other Civil Rights | 510 Motions to Vacate Sentence<br>**HABEAS CORPUS:**<br>530 General<br>535 Death Penalty<br>540 Mandamus & Other<br>550 Civil Rights<br>555 Prison Condition | 710 Fair Labor Standards Act<br>720 Labor/Mgmt Relations<br>730 Labor/Mgmt Reporting & Disclosure Act<br>740 Railway Labor Act<br>790 Other Labor Litigation<br>791 Empl Ret Inc. Security Act | 861 HIA (1395ff)<br>862 Black Lung (923)<br>863 DIWC/DIWW (405(g))<br>864 SSID Title XVI<br>865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>870 Taxes (U.S. Plaintiff or Defendant)<br>871 IRS - Third Party 26 USC 7609 | 900 Appeal of Fee Determination Under Equal Access to Justice<br>950 Constitutionality of State Statutes<br>890 Other Statutory Actions |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- **X** 1 Original Proceeding
- 2 Removed from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from another district (specify)
- 6 Multidistrict Litigation
- 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Filing pursuant to 42 U.S.C. Sections 1983 and 1985. Retaliation by termination of employment without due process for exercising rights guaranteed by the First, Fifth, and Fourteenth Amendments.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P 23

**DEMAND $**

CHECK YES only if demanded in Complaint
JURY DEMAND: **X** YES  NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____          DOCKET NUMBER _____

DATE  Feb 14 2005

SIGNATURE OF ATTORNEY OF RECORD  John Green Jr.

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT CO[U]RT
DISTRICT OF MASSACHUSE[TTS]

# 05 - 40030

1.  Title of case (name of first party on each side only)  Bolduc v. Town of Webster et al.

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

| | | |
|---|---|---|
| ☐ | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. |
| ☑ | II. | 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121<br>740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases |
| ☐ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,<br>315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,<br>380, 385, 450, 891. |
| ☐ | IV. | 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,<br>690, 810, 861-865, 870, 871, 875, 900. |
| ☐ | V. | 150, 152, 153. |

3.  Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☐    NO ☑

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

YES ☐    NO ☑

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐    NO ☐

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐    NO ☒

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES ☐    NO ☑

A.  If yes, in which division do all of the non-governmental parties reside?

Eastern Division ☐    Central Division ☐    Western Division ☐

B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division ☐    Central Division ☑    Western Division ☐

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

YES ☐    NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  John J. Green, Jr., of Green, Miles, Lipton & Fitz-Gibbon

ADDRESS  77 Pleasant Street, P.O. Box 210, Northampton, MA  01061-0210

TELEPHONE NO.  413-586-8218

(Coversheetlocal.wpd - 10/17/02)