UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No.: 05-40030FDS

|  |  |
|---|---|
| JOHN A. BOLDUC, JR.<br>　　　　Plaintiff,<br><br>v.<br><br>TOWN OF WEBSTER, ROBIN<br>LEAL, RICHARD BERGERON,<br>and WILLIAM KEEFE,<br>　　　　Defendants. | **FIRST AMENDED<br>COMPLAINT AND DEMAND<br>FOR JURY TRIAL** |

## NATURE OF CLAIM

1.　　　This is an action brought by John A. Bolduc, Jr. (hereinafter "Bolduc"), a 9 year police officer with the Town of Webster Police Department, against the Town of Webster, the Webster Town Administrator, the Webster Chief of Police, the former Webster Chief of Police, and other as yet unidentified Defendants, pursuant to 42 U.S.C. § 1983, 42 U.S.C. 1985 (2), 42 U.S.C. 2000e § 1, et seq., as amended (hereinafter "Title VII"), M.G.L. Chapter 12H § 11I, M.G.L. Chapter 151B (the Fair Employment Practices Act), and M.G.L. Chapter 149 §185 (the Whistleblower Act), and for retaliation and aiding and abetting in retaliatory discrimination by the Defendants against the Plaintiff.

　　　　The Plaintiff seeks injunctive relief, compensatory damages, punitive damages, costs, attorney's fees and recovery for other losses and damages to the extent provided by statute or common law.

## ADMINISTRATIVE PROCEDURES

2.     On May 15, 2003, Bolduc advised the Webster Town Administrator, in writing, of his intention to file a complaint with the Massachusetts Commission Against Discrimination (hereinafter "MCAD"). A true and exact copy of the writing is attached hereto, incorporated herein by reference and marked as Exhibit "A."

3.     On June 16, 2003, Bolduc filed a timely charge of retaliation with the MCAD and with the Equal Employment Opportunity Commission, naming as Respondents the Town of Webster Police Department and the Town of Webster Chief of Police, Richard Bergeron, Jr. A true and exact copy of the Complaint is attached hereto, incorporated herein by reference and marked as Exhibit "B."

4.     Bolduc has satisfied all administrative prerequisites to the filing of this action as required by 42 U.S.C. 2000e and M.G.L. Chapter 151B.

5.     On August 5, 2004, Bolduc sent written notice to the Town of his intention to file suit pursuant to M.G.L. Chapter 149 § 185 and has satisfied the notice requirements required by said statute. A true and exact copy of the writing is attached hereto, incorporated herein by reference and marked as Exhibit "C."

### JURISDICTION AND VENUE

6.     With respect to Bolduc's claim under Title VII, this Court has original jurisdiction pursuant to 42 U.S.C. §2000e – 5(f) and 28 U.S.C. § 1331.

7.     With respect to Bolduc's claims under M.G.L. Chapter 151B, M.G.L. Chapter 149 § 185, and M.G.L. Chapter 12H § 11I, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8.     With respect to Bolduc's claims pursuant to 42 U.S.C. §§1983 and 1985, this Court has jurisdiction pursuant to 28 U.S.C. § 1343.

9.    The violations of Plaintiff's rights as alleged herein were committed within the Commonwealth of Massachusetts, Worcester County.

PARTIES

10.    Plaintiff, John A. Bolduc, who is, and was at all relevant times hereto, a citizen of the United States of America and the Commonwealth of Massachusetts, resides at 33 High Crest Park, Webster, Worcester County, Massachusetts.

11.    Defendant Town of Webster, (hereinafter the "Town"), is a municipal corporation located in Worcester County, Massachusetts.

12.    Defendant Robin Leal, (hereinafter "Leal"), is a natural person and is the Administrator of the Town of Webster. She resides at 84 Upper Gore Road, Webster, Worcester County, Massachusetts. Leal is sued both individually and in her capacity as Town Administrator of Webster.

13.    Defendant Richard Bergeron, Jr., (hereinafter "Bergeron"), is a natural person and a former Chief of Police of the Town of Webster. He resides at 107 Cotton Hill Road, Belmont, New Hampshire. Bergeron is sued both individually and in his capacity as the former Chief of Police of the Town of Webster.

14.    Defendant William Keefe, (hereinafter "Keefe"), is a natural person and the Chief of Police of the Town of Webster. He resides at 29 Hanson Road, Charlton, Worcester County, Massachusetts. Keefe is sued both individually and in his capacity as Chief of Police of the Town of Webster.

15.    Other individuals as yet unidentified are believed to have jointly and severally engaged in a pattern of antagonism and retaliatory conduct in cooperation and

concert with the above named Defendants. As identified, these individuals will be sued individually and in their official capacity, if any.

16.    Each Defendant is sued individually and in his or her official capacity. Relief is sought against each and all Defendants, as well as its or their agents, assistants, successors, employees and all persons acting in concert or cooperation with them or at their direction.

17.    The Defendants have been, are at present, or will be acting under color of authority and law of the Commonwealth of Massachusetts, or in active concert with such Defendants who are so acting.

FACTS GIVING RISE TO JOHN A. BOLDUC'S CAUSES OF ACTION

18.    Plaintiff, John A. Bolduc, was first employed by the Town as a police officer in March of 1995.

19.    The Defendant Bergeron was hired as Town of Webster Chief of Police in June of 1996.

20.    On or about October 19, 2001, Bolduc was appointed as a Provisional Sergeant, effective October 22, 2001.

21.    On June 30, 2002, Mark Stankiewicz (hereinafter "Stankiewicz"), in his capacity as Town Administrator, appointed Bolduc as a Sergeant with the Webster Police Department.

22.    On February 22, 2003, Bolduc was in the company of several other Town employees at the Colonial Club Restaurant in the Town of Webster. Those other employees included Deputy Chief Thomas Ralph (hereinafter "Ralph") of the Webster Police Department, Officer Brian Barnes (hereinafter "Barnes") of the Webster Police

Department, and several other Town employees. Barnes was in uniform. During the course of that luncheon, Barnes made racist remarks directed at African-Americans with whom he had come in contact.

23.    On or about March 4, 2003, Ralph expressed concern to Town Administrator Stankiewicz regarding the state of the Webster Police Department, particularly noting that Officer Barnes had been a disciplinary problem, but that Chief Bergeron had overridden his efforts to discipline Barnes through the chain of command of the Webster Police Department.

24.    Both Chief Bergeron and Officer Barnes had served together on the Quincy Police Department, prior to Bergeron becoming Chief of Police of the Town of Webster.

25.    On or about April 15, 2003, Ralph filed a formal written complaint with Webster Chief of Police Bergeron, directed at Officer Barnes' racist conduct. Ralph specifically noted that other Webster police officers had complained to him about Barnes' consistent use of racially derogatory statements. Ralph's complaint indicated that, on numerous occasions, members of the Webster Police Department had complained that Officer Barnes had referred to African-Americans as "niggers," to Asian-Americans as "chinks," and to Hispanic people as "spics." Ralph also complained to Chief Bergeron that Barnes was non-compliant with the racial profiling law, which required officers to state the race of the operator when they stop a vehicle.

26.    After Ralph handed him the Complaint, Defendant Bergeron ordered Ralph out of the building.

27.     Shortly thereafter, Chief Bergeron ordered Ralph to turn in his assigned vehicle.

28.     On or about April 15, 2003, Bolduc went to confer with Bergeron with respect to the pending Amato murder investigation to which he was assigned. Upon Bolduc entering Bergeron's office, Bergeron started to raise his voice and directed profanity at Bolduc, accusing Bolduc of displaying inappropriate loyalty to Ralph. Bergeron specifically said to Bolduc, "Your friendship, support and loyalty to the Deputy Chief is going to cost you." At that time, Bergeron showed Bolduc a copy of the formal written complaint that had been filed with Chief Bergeron by Deputy Chief Ralph. Bergeron accused Bolduc of having collaborated with Ralph with respect to the formal complaint that had been filed, which Bolduc denied.

29.     Bergeron then handed Bolduc the letter and instructed him to read it. Bolduc read the letter, then informed Chief Bergeron that this was the first he knew of the letter. After concluding the conversation with Bergeron, Bolduc left the station.

30.     On or about April 17, 2003, Ralph informed Bolduc that he was ordered by Bergeron to supply Bergeron with the names of all witnesses, in writing, to support his allegations in the complaint against Officer Barnes. Ralph informed Bolduc that he would be supplying Bergeron with Bolduc's name based on Bolduc's having overheard Barnes' remarks at the February 22, 2003 luncheon meeting at the Colonial Club.

31.     On or about April 17, 2003, Ralph informed Bolduc that his name would appear on a list of witnesses in a discrimination suit Ralph was filing against the Webster Police Department.

32.     On or about May 1, 2003, Ralph filed a discrimination claim against the Webster Police Department with the MCAD.

33.     On May 1, 2003, Bolduc stopped by Bergeron's office to brief him further on the Amato investigation. During that conversation, Bergeron asked Bolduc if he had ever heard Officer Barnes say anything racist. Bolduc indicated that he had. Bergeron responded angrily and ordered Bolduc to provide him a written statement with names and dates.

34.     On May 12, 2003, Bergeron came to Bolduc's office, located in the lower level of the Webster Police Station, and asked if Bolduc had produced a written narrative, as ordered, regarding Barnes' racist behavior. Bolduc informed him that he had, and gave it to Bergeron. A true and exact copy of the narrative is attached hereto, incorporated herein by reference and marked as Exhibit "D."

35.     When Bergeron read Bolduc's written narrative, Bergeron indicated that Bolduc was to be returned to uniformed patrol duty, effective immediately.

36.     On May 12, 2003, Bolduc was informed that his schedule of duty and working days was to be changed to nights, effective immediately, and that he was to be put back into rotation to uniform patrol duties.

37.     On or about May 14, 2003, Bolduc learned that John Stevens, a former Webster reserve police officer, was told by Bergeron that he would be reinstated if he was able to provide Bergeron with any negative information concerning Bolduc or Ralph.

38.     On or about May 19, 2003, Bolduc was informed via e-mail by Bergeron that he was to surrender the office that he had used for the last three years and relinquish all keys to Bergeron by the end of the business day. After losing his office, Bolduc

continued to perform duties as assigned, including duties as Department Domestic
Violence Officer, which required him to maintain records at home.

39.     On or about April 16, 2003, Stankiewicz left his position as Administrator
of the Town of Webster.

40.     On or about May 15, 2003, Bolduc filed a memorandum with Steven
Boudreau (hereinafter "Boudreau"), then Webster Town Administrator, indicating that he
intended to file a complaint with the MCAD, and asserting that he had been and
continued to be the target of retaliation by Webster Police Chief Bergeron because he had
been identified by Ralph as a witness in a pending MCAD investigation. The pending
MCAD investigation to which he referred was Ralph's complaint filed on or about May
1, 2003.

41.     On or about May 15, 2003, Webster police officers J. Brooks and M.
Keough informed Bolduc that they were questioned by Bergeron, who was seeking
information about Bolduc mistreating prisoners.

42.     On or about May 19, 2003, Bolduc sent a second memorandum to Town
Administrator Boudreau concerning retaliatory actions by Bergeron directed at Bolduc.

43.     On or about June 15, 2003, E. Burgess, a Town resident, was questioned
by Webster police officer S. Novick and Bergeron, inquiring whether he had any negative
information to provide regarding Bolduc.

44.     On June 16, 2003, Bolduc filed a complaint with the MCAD, alleging that
the Webster Police Department and Chief Bergeron had subjected him to unequal terms
and conditions of employment, in retaliation for being identified as a witness with respect
to discrimination alleged by members of the Webster Police Department as asserted by

Ralph. The complaint filed with the MCAD specifically alleged that the Town and Bergeron had violated Massachusetts General Laws Chapter 151B § 4 (4) and Title VII of the 1964 Civil Rights Act, as amended.

45.     On or about June 16, 2003, Bolduc filed his MCAD complaint, alleging that the Town Police Department had subjected him to unequal terms and conditions of employment, retaliation and civil rights violations for being a witness in a discrimination case against the Town Police Department and participating in and assisting in proceedings opposing discriminatory practices.

46.     On or about July 14, 2003, Bergeron was placed on paid administrative leave by Boudreau.

47.     On or about July 16, 2003, Keefe, in his capacity as Acting Chief of the Webster Police Department, approached Boudreau, then Town Administrator, requesting that he terminate Bolduc and Ralph.

48.     On or about August 15, 2003, Keefe, in his capacity as Acting Webster Police Chief, again approached Boudreau, Town Administrator, to request that he terminate Deputy Chief Ralph and Sergeant Bolduc. Boudreau refused.

49.     On or about October 1, 2003, Leal was appointed as Town Administrator by a two in favor and one opposed vote by the Town Select Board, with two of five members of the Board absent, without notice of an appointment motion, and before all candidates for the position were interviewed as agreed by the Select Board.

50.     On or about December 10, 2003, Deputy Chief Ralph and Bolduc were requested by R. Miller, a member of the Town Select Board, to meet with him at his personal business location. Miller indicated that he was conferring with Ralph and

Bolduc in his capacity as Chairman of the Select Board on behalf of Town Administrator
Leal to ask that they resign from the Webster Police Department. Miller stated that Leal
promised "glowing" recommendations if they resigned. Both Ralph and Bolduc refused
to resign. At the conclusion of the meeting of Ralph and Bolduc with Miller, R. Regis,
another member of the Select Board, entered and asked if their resignations had been
tendered. Both Ralph and Bolduc indicated that their resignations had not been tendered.
Regis then stated to Bolduc that Leal told him she intended to fire Bolduc after a hearing.

51.    On December 12, 2003, Bolduc testified on behalf of Ralph at a
disciplinary hearing conducted by Leal as Hearing Officer in her capacity as Town
Administrator. The disciplinary hearing was generated by charges filed by then retired
Webster Police Chief Bergeron against Ralph, as a result of the matters on or about April
15, 2003 in which Ralph had alleged that Barnes was engaging in racist activity.

52.    Forty-eight hours after Bolduc testified on behalf of Ralph at his
disciplinary hearing, Keefe, in his capacity as Acting Police Chief for the Town of
Webster, was directed by Leal to conduct an internal investigation targeting Bolduc's
performance of duty, which investigation was unlimited in scope and time.

53.    On December 12, 2003, Bolduc was placed on paid administrative leave
pending the outcome of an investigation for his use of "excessive and unnecessary force"
involving incidents previously investigated by Ralph in his capacity as Deputy Chief in
February and November of 2002. Ralph's investigations found no improper conduct by
Bolduc. The investigation was also to review an arrest in which Bolduc participated,
which occurred on November 30, 2003.

54.    On or about January 5, 2004, Bolduc was ordered to attend a "fit for duty exam" with Leo Polizotti, M.D. (hereinafter "Polizotti"). Before the exam, Keefe, in his capacity as Acting Chief of the Webster Police Department, sent a letter to Polizotti with negative information, and characterizing Bolduc as being manipulative. He further warned Polizotti of Bolduc's high intelligence, ability to deceive, and ability to perform well on tests. Leal also telephoned Polizotti to inform him that Bolduc had an anger problem about which the Town already was aware.

55.    On January 14, 2004, Bolduc was informed by Polizotti of Acting Chief Keefe's letter and of Leal's phone call to him. He further indicated that Keefe supplied only negative information for the Polizotti review. Polizotti told Bolduc that he believed the Town was setting him up.

56.    On or about February 1, 2004, Leal informed Regis, a member of the Select Board of the Town of Webster, that she had enough to terminate Bolduc. Regis informed Bolduc of the information provided to him by Leal.

57.    On or about February 4, 2004, Acting Police Chief Keefe requested that T. Pycell, a Webster police officer, amend an Affidavit filed by him to read that Bolduc had struck a prisoner more than once, which amendment would contradict an earlier statement by Pycell.

58.    On or about February 4, 2004, Acting Chief Keefe interviewed paramedics G. Milliard and Wrubleski, taking written statements from each of them with respect to the November 2003 arrest being investigated (Greenwood matter). After they had signed their statements, Keefe altered the statements to include negative information about Bolduc.

59.    On or about February 23, 2004, the Town Select Board unanimously voted to award Bolduc a commendation for his work on the Amato murder investigation.

60.    On or about February 25, 2004, Polizotti left a message on Bolduc's answering machine that Leal and Acting Chief Keefe had told him that witnesses had recanted their statements in the Greenwood matter, which information was untrue.

61.    On or about March 1, 2004, Leal requested that each member of the Webster Select Board individually rescind the Bolduc commendation related to the Amato case, because it would weaken her position at the disciplinary hearing and in matters pending before the MCAD. Two members of the Webster Select Board, Martell and Dowgiewicz, agreed to change their votes and the award to Bolduc was rescinded.

62.    On or about March 1, 2004, Keefe, in his capacity as Webster Police Chief, sent a letter to Leal recommending Bolduc's termination. Keefe did not interview any witnesses with exculpatory or positive information with respect to Bolduc's conduct with respect to the specific incidents being investigated, or as a member of the Webster Police Force in general.

63.    On March 9, 2004, the Webster Police Department delivered to Bolduc information requested by his attorney, months earlier, to be used at the disciplinary hearing for Bolduc, fewer than twelve hours before the start of the hearing.

64.    On or about March 9, 2004, counsel for Bolduc was informed that the Town had lost Bolduc's personnel file.

65.    On March 10, 2004, Leal, as Hearing Officer, conducted a disciplinary hearing for Bolduc, arising from allegations of prisoner mistreatment. Two of the allegations had previously been investigated, close in time to the incidents, by Deputy

Chief Ralph and were found to have been unsubstantiated. None of the prisoners who were referred to in the disciplinary hearing allegations had filed a complaint with the Webster Police Department or any other agency with respect to Bolduc's conduct before, during, or after their arrests.

66.    On March 19, 2004, Town Administrator Leal terminated Bolduc from the Webster Police Department.

67.    On or about April 15, 2004, Regis met with Ralph and P. O'Donald and informed them that Leal had told him prior to the termination hearing that she fully intended to fire Bolduc, but had to conduct the hearing to make it look good.

68.    Since on or about April 15, 2003, when Bolduc corroborated some of the allegations that were asserted by Deputy Chief Ralph in Ralph's formal complaint to Bergeron regarding Barnes, Bolduc has been exposed to a concerted pattern of antagonism and retaliatory conduct by the Town, Bergeron, Leal, Keefe, and others as yet unidentified in concert with them.

69.    Coincident with Bolduc's corroboration and identification of Ralph's statements, and identification of him as a witness to racist behavior by Officer Barnes, Defendants Town of Webster, Bergeron, Leal, and Keefe initiated a systematic pattern of unfair and abusive behavior aimed at chilling Bolduc's exercise of his First Amendment rights and his participation both as a corroborating witness and a supportive witness in the disciplinary hearing directed at Acting Chief Thomas Ralph. The behavior included, but was not limited to, the removal of Bolduc from the Amato murder investigation and reassignment to normal patrol duties, the termination of assigned office space for Bolduc in his capacity as Sergeant of the Webster Police Force, the reopening of previously

investigated matters related to Bolduc's conduct in the course of participating in the arrest of prisoners with other officers who were not subjected to investigation, and the destruction of Bolduc's personnel file. These actions by the Defendants jointly and severally were engaged in for the purpose of retaliating against Bolduc and terminating him from the Webster Police Department for his support of Ralph and his corroboration of the racist behaviors of Officer Barnes. From on or about April 15, 2003 through March 19, 2004, the Defendants have jointly and severally, and in concert, conspired to and continued a pattern of retaliatory, unfair and abusive conduct aimed at retaliating against Bolduc for asserting his First Amendment rights, corroborating the racist behavior of Barnes alleged by Ralph, and for Bolduc's filing a complaint with the MCAD. The Defendants' joint and several conduct, to include the reopening of the investigations previously conducted by Deputy Chief Ralph, constituted an unprecedented review of already closed investigations and a departure from Webster Police Department policy. The reinvestigated incidents have been used to assert that Bolduc does not qualify for retention by the Webster Police Department, which facts are known to the Defendants to be untrue and contrary to evidence that was both in their possession and available to them.

      70.    The Defendants jointly and severally agreed, prior to the conduct of Bolduc's disciplinary hearing, to terminate Bolduc, attempted to conjure and fabricate negative evidence, and limited the evidence considered to evidence that was exclusively detrimental to Bolduc. The Defendants conspired to provide Polizotti, the individual assigned to conduct a "fit for duty examination," with false and negative information that would be detrimental to Bolduc.

71.    From April 15, 2003 to March 19, 2004, the Defendants jointly and severally, and in concert with the Town of Webster, have continued a pattern of retaliatory, unfair and abusive conduct aimed at chilling Bolduc's First Amendment rights. They conducted a detailed and unprecedented review of the incidents previously investigated by Ralph, which review they used to assert that Bolduc is not qualified for retention as a Webster police officer and led to his termination. In the course of conducting their investigation, the Defendants jointly and severally altered or destroyed records in the possession of the Town of Webster that would have corroborated Bolduc's excellent performance as a Webster police officer from the date of hire to the date of his termination.

72.    Defendant Town of Webster and Defendant Bergeron vociferously disagreed with and actively opposed Bolduc's corroboration related to the racist behavior of Officer Barnes. Since on or about May 1, 2004, and for a period of time currently unknown to Bolduc, the Defendants Town of Webster, Bergeron, Keefe and Leal, have unlawfully agreed among themselves to punish Bolduc for expression of his opinions with regard to Barnes' racist behavior, his corroboration of the racist behavior asserted by Deputy Chief Ralph in his complaint of April 15, 2004, and for his support of Deputy Chief Ralph at a disciplinary hearing directed at him because of his complaints regarding Officer Barnes' racist behavior.

73.    Pursuant to and in furtherance of the aforesaid conspiracy, the Defendants, Town of Webster, Leal, Bergeron and Keefe, acted to cause the removal of Bolduc from his position as a Webster police officer. To accomplish this purpose, the Defendants asserted that Bolduc had behaved in a manner inconsistent with proper prisoner handling

on three occasions, which assertions the Defendants jointly and severally knew to be untrue. In the course of asserting those matters, the Defendants jointly and severally reached a determination to terminate Bolduc, and, prior to the conduct of his disciplinary hearing, tampered with statements in evidence previously submitted by witnesses to those incidents, and conjured up other evidence known by them to be untrue, denying him equal protection and due process of law.

74.    Defendant Leal, in furtherance of the conspiracy of all of the aforesaid Defendants, caused the Select Board of Webster to rescind an agreement on their part to award Bolduc a commendation for his performance on the Amato murder investigation.

75.    Since on or about May 1, 2003, and for a period of time currently unknown to Bolduc, Defendants have unlawfully agreed among themselves to punish Bolduc for corroboration of the racist behavior of Officer Barnes as asserted by Deputy Chief Ralph in his formal complaint of April 15, 2003, to prevent Bolduc from corroborating information asserted by Ralph in his formal complaint and in his MCAD complaint, and to prevent Bolduc from testifying credibly with respect to the racist behavior of Officer Barnes observed by him.

76.    Pursuant to and in furtherance of the aforesaid conspiracy, the Defendants determined to cause the termination of Bolduc from his position as a Webster police officer.

77.    Defendants' concerted and joint and several actions leading to the termination of Bolduc were undertaken pursuant to the aforesaid unlawful agreement, in order to retaliate against and punish Bolduc for the exercise of his freedom of speech as

protected by the First Amendment of the United States Constitution and to attempt to prevent further exercise of those rights.

78.    Defendants Leal and Keefe deliberately and maliciously provided the individual assigned to conduct a "fit for duty exam" of Bolduc with information on an ex parte basis, which they knew to be false and misleading, to wit, that Bolduc had an anger problem and was manipulative.  Their actions were taken in order to deprive Bolduc of a fair and impartial review, in violation of his rights to due process and equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution.

79.    Bolduc avers that, had he been given a fair and impartial hearing in accordance with basic and elemental due process, he could demonstrate with substantial and credible evidence that the failure to continue his employment as a Webster police officer was arbitrary, capricious and unlawful, and that his termination was the result of the exercise of his constitutional rights and was unrelated to his performance as a Webster police officer or the needs of the Webster Police Department.

80.    No real question existed as to Bolduc's ability to perform suitability as a Sergeant of the Webster Police Department within the actual structural needs of the Webster Police Department.

81.    All of the actions of the Defendants, the Town of Webster, Bergeron, Leal, Keefe and as yet unidentified conspirators, regarding Bolduc's termination were taken with the knowledge and approval of the Select Board of the Town of Webster.

82.    As a proximate result of the illegal actions of the Defendants as alleged above, Bolduc has been deprived of his employment as an officer of the Webster Police Department on or about March 19, 2004, and has and will continue to suffer a loss of

income. Bolduc has already suffered loss of reputation and opportunity to pursue his chosen profession.

CAUSES OF ACTION

83.     Paragraphs 1 – 82 are hereby incorporated in and made a part of Counts I through VI, as if fully stated therein.

COUNT I
(42 U.S.C. § 1983)

84.     The Defendants, acting under color of state law, jointly and severally deprived Bolduc of civil rights guaranteed by the First, Fifth and Fourteenth Amendments to the United States Constitution, in that the actions, including, but not limited to, the termination of Bolduc's employment on March 19, 2004, were intended to and did in fact punish and retaliate against Bolduc for the exercise of his freedoms of speech, association, and inquiry, were intended to and did deny him substantive and procedural due process, and were intended to and did deny him the privileges and immunities secured by the Constitution and laws of the United States, all in violation of 42 U.S.C. § 1983.

COUNT II
(42 U.S.C. § 1985)

85.     The actions of the Defendants and each of them violated the First, Fifth and Fourteenth Amendments to the United States Constitution, in that, by acting in concert as described above, they have deprived Bolduc of his liberty interests in free speech and association and of his protected property interest in his occupation, without due process and equal protection, specifically, the decision to terminate Bolduc's employment as a Webster police officer on or about March 19, 2004, which termination:

     a.  was based upon invidious, race-based animus to retaliate against Bolduc for his refusal to ignore racist conduct by a fellow officer and for his support of the investigation of complaints of racism made by then Deputy Chief Ralph; and

     b.  was accomplished by two or more of the Defendants acting in concert and pursuant to invidious, race-based and class-based animus, and the purpose of which was to obstruct the due course of justice in Massachusetts, a Commonwealth of the United States, all in violation of 42 U.S.C. § 1985.

COUNT III
General Laws Chapter 151B

86.    The actions of the Town of Webster, by and through its Police Department, and the Defendant Richard Bergeron, Jr., both individually and in his capacity as Chief of Police of the Town of Webster, jointly and severally, as set forth above, constitute termination, retaliation, intimidation, and aiding and abetting, in violation of General Laws Chapter 151B § 4, paragraphs 4, 4A, and 5.

87.    As a direct and proximate result of those acts, Bolduc has been damaged and continues to be damaged.

88.    The Town of Webster and the Defendant Richard Bergeron, Jr. jointly and severally are liable to Bolduc for the full amount of his damages.

COUNT IV
Title VII

89.    The actions of the Town of Webster, by and through its Police Department, and Richard Bergeron, Jr., in his capacity as Chief of Police, as set forth

above, constitute retaliation and intimidation, in violation of 42 U.S. C. 2000e § 1 et seq.
(Title VII).

90.    As a direct and proximate result of those acts, Bolduc has been damaged
and continues to be damaged.

91.    The Town of Webster is liable to Bolduc for the full amount of his
damages.

## COUNT V

92.    The actions of the Town of Webster, by and through its employees and
agents and each of them, constitute a violation of General Laws Chapter 149 § 185 et
seq., the Whistleblower Act.

93.    The Plaintiff gave due notice to the Defendant Town of Webster of the
allegations of official misconduct before he filed this claim.

94.    As a direct and proximate result of those actions, Bolduc has suffered loss
of employment and benefits, emotional distress and other damages and losses.

## COUNT VI
### Massachusetts General Laws Chapter 12H and I

95.    The actions of the Defendant Town of Webster and Defendant Richard
Bergeron, Jr. and each of them deprived Bolduc of his civil rights as guaranteed by the
First and Fourteenth Amendments of the United States Constitution and Articles I and X
of the Declaration of Rights of the Commonwealth of Massachusetts, all in violation of
Massachusetts General Laws Chapter 12 § 11I.

96.    As a direct and proximate result of the actions of Defendant Town of
Webster and Defendant Richard Bergeron, Jr. and each of them, Bolduc has suffered
emotional distress, lost wages and benefits, and other losses and damages.

WHEREFORE, the Plaintiff respectfully requests the Court to:

a.        Issue an Order restoring Plaintiff to his employment and enjoining and restraining the Defendants, their agents, assistants, successors, employees, attorneys and all persons acting in concert with them or at their direction from further violating the rights, privileges, and immunities guaranteed Plaintiff under the Constitution of the United States of America and the Massachusetts Declaration of Rights, including, but not limited to, the adverse alteration of the terms and conditions of his employment;

b.        Grant Plaintiff compensatory damages for his injuries, including, but not limited to: loss of wages and benefits resulting from his termination from the Webster Police Department; great emotional anguish and mental distress; inability to transact his business; and, other divers injuries and damages;

c.        Grant the Plaintiff such punitive damages against each Defendant as the law may allow;

d.        Grant Plaintiff his costs of this action, including reasonable attorney's fees and interest;

e.        Grant such other relief that this Court may deem just and proper.

CLAIM OF JURY TRIAL

The Plaintiff claims trial by jury.


Date:  June 8, 2005                          Respectfully submitted,
                                             John Bolduc,
                                             By his attorneys,


                                             /s/ John J. Green, Jr._____
                                             John J. Green, Jr., BBO# 209020
                                             Harry L. Miles, BBO# 345800
                                             GREEN, MILES, LIPTON &
                                             FITZ-GIBBON
                                             77 Pleasant Street, P.O. Box 210
                                             Northampton, MA  01061-0210
                                             Telephone: (413) 586-8218
                                             Fax: (413) 584-6278


CERTIFICATE OF SERVICE

        I, John J. Green, Jr., do hereby certify that, on this date, I served a copy of the foregoing document upon the Defendants electronically and by mailing same, first class postage prepaid, to:

        Attorney Carole Lynch
        Morrison Mahoney, LLP
        Tower Square
        1500 Main Street, Suite 2400
        P.O. Box 15387
        Springfield, MA  01115-5387

        Attorney William P. Breen, Jr.
        Murphy, Hesse, Toomey & Lehane, LLP
        Crown Colony Plaza
        300 Crown Colony Drive, Suite 410
        P.O. Box 9126
        Quincy, MA  02269-9126


        Date:  June 8, 2005                  /s/ John J. Green, Jr._____
                                             John J. Green, Jr.